The Wisconsin Fire & Marine Insurance Company Bank v. E. Gordon Filer, Assignee, and The Manistee Salt & Lumber Company. (In the Matter of the Petition of Charles L. Ortmann.)

*Contract for sale of timber—Bill of sale—Reservation.*

A land-owner contracted for the sale of timber on certain lands which he had conveyed, in trust to secure a creditor, giving the vendee three years in which to remove it, and retaining the title until the purchase price was paid, the payment of which was further secured by the vendee's note. The vendor soon after accepted the indorsed note of an assignee of the contract in payment of said note, and deposited the *substituted* paper with the creditor, who still held the legal title to the lands. The indorser, having secured an assignment of the timber contract, and being desirous of cutting the timber and of securing an extension of the time for its removal, took up the indorsed note with new paper, which was left with the creditor, who reconveyed the lands on which the timber stood to the vendor, who thereupon executed a bill of sale to the second assignee, which was declared to be given in fulfillment of the timber contract, and contained a covenant of warranty, except as to the conditions and provisions of the original contract, and the vendor, by a separate agreement, extended the time for removal for one year. And it is held that the bill of sale conveyed the *absolute* title to the timber to the vendee therein named, and that if it was the intention of the vendor by the exception to retain the title to the timber, as provided in the original contract, such exception was repugnant to the grant, and void.

Appeal from Manistee. (Judkins, J.) Argued January 17, 1890. Decided April 11, 1890.

Petition for payment of claim against an insolvent estate. Petitioner appeals. Decree affirmed. The facts are stated in the opinion.

*McAlvay & Grant,* 'for appellant.

*Uhl & Crane* and *Ramsdell & Benedict,* for defendants.

CHAMPLIN, C. J. The petitioner presents a claim against the receivers of an insolvent estate, praying that he may be paid the full balance remaining due of the purchase price of certain pine and ash timber which he claims to have sold by contract, retaining title in himself until the purchase price should be paid, the avails of which timber he claims is in the hands of the receivers. The important question is whether he has parted with his title to the timber. A history of the transactions, stated as briefly as possible, is necessary to a proper understanding of the question raised.

On January 2, 1886, Charles L. Ortmann was the owner of large tracts of land in Michigan, and among them the lands upon which the timber in question was standing. On that day, being indebted to the bank of which Mr. Edward H. Butler was president, and desiring to secure the bank, he conveyed the tracts of land by warranty deed to Mr. Butler, who held them in trust and as security for the bank.

On December 7, 1886, Ortmann entered into a written contract with Eugene Chappell and D. J. Smith, in which he agreed to sell to them all the pine and ash timber then growing, standing, and lying upon certain described lands in township 20 N., range 11 W., for $14,000. Four thousand six hundred and sixty-seven dollars was to be paid down, and the balance, $9,333, in accordance with a promissory note, with interest at 7 per cent., 18 months from date. It was mutually agreed that the title to the timber should remain in Ortmann, and should not pass to Chappell and Smith until the note, and interest

thereon, should be fully paid and satisfied, and that upon such payment the title of the timber should pass to Chappell and Smith. It was stipulated that Chappell and Smith should have three years from January 1, 1887, to cut and remove the timber, and that after January 1, 1890, all the pine and ash timber then left on the land should revert to Ortmann, and they should have no right to cut and remove timber after that date. They also agreed to pay the taxes after the year 1886.

Such were the main features of the contract, so far as affects the question in dispute. It will be seen that there was an implied permission to enter upon the lands and cut and remove pine and ash timber at once, but the title to the timber so cut remained in Ortmann until the note should be fully paid, when the title was to pass to the purchasers. The rights of the parties were not very definitely fixed or guarded. There was no restriction against cutting more than a certain quantity, without paying in proportion as such cutting would lessen the security; and the title of Ortmann would be of little security after the lumber had lost its identity by being thrown upon the market, and mingled with other timber of like grades.

In August, 1887, R. A. Seymour negotiated with the purchasers under the contract, and by a memorandum of agreement dated August 19, 1887, Ortmann made an agreement with Seymour, in which it was recited that Ortmann did, on December 7, 1886, sell to Chappell and Smith all the pine and ash timber on the lands described in that contract, and that the note of $9,333, maturing June 7, 1888, given by them, was unpaid, and reciting that Chappell and Smith had sold to Seymour said pine and ash timber, and he had assumed the payment of the note, with interest; and therefore agreeing to accept payment from Seymour of the note and interest, in a note made by

Seymour payable to the order of M. Engelmann, and
indorsed by him to Ortmann, payable on or before June
7, 1888, and payment of the interest from December 7,
1886, to the date of the agreement.   On the delivery of
the new note of Seymour, and payment of interest, Ort-
mann was to cancel and give up the Chappell and Smith
note; and it was further recited that Butler held the Chap-
pell and Smith note, as well as the title to the land, as
collateral security, and had agreed to reconvey the land
upon payment of $7,000, and to accept the Seymour note,
indorsed by Engelmann, in the place of the Chappell and
Smith note, which was to be delivered up and canceled;
and it was therefore agreed that the Chappell and Smith
contract should stand, aud be in full force and effect in
all its provisions and covenants, until the aforesaid note
of said Seymour and Engelmann, with interest thereon,
should be fully paid and satisfied, and the agreement was
made a part of the contract.   This contract was, on Sep-
tember 14, 1887, assigned by Seymour to Engelmann.   On
September 22 a formal assignment of the contract of
December 7, 1886, was made by Chappell and Smith, and
others who had become interested with them, to Seymour;
and on September 24, 1887, Seymour assigned his interest
in the contract to Engelmann.

It is proper now to call attention to certain correspond-
ence appearing in the record.   The first letter is dated
September 10, 1887, and is written from Detroit by Mr.
Ortmann to Mr. Seymour at Manistee.   This letter refers
to the exchange of the Seymour-Engelmann note for the
Chappell and Smith note, then in the hands of Mr. But-
ler.   The next letter bears the same date, and is written
by Ortmann at Detroit to Engelmann at Manistee.   In
this he says that he forwarded to R. A. Seymour the con-
tract for timber purchased by him from Chappell and
Smith, refers to Seymour's doubts relative to the title,

and explains the situation of the title fully to Mr. Engelmann. On September 13, 1887, Mr. Engelmann writes to Mr. Ortmann, acknowledging the receipt of his favor of the 10th, and informs him that he has bought the timber of Mr. Seymour, and that he looks to him for the title. He then proceeds:

"But will say, according to your letter, it seems you only owe $7,000 to Mr. Butler, and, if you wish, I will do this,—namely, I will arrange with you for the $2,333, if Mr. Butler is satisfied, and pay the balance on or before June 1, providing I can cut the timber. If this helps you, let me know, and will do what I can for you."

On September 14, 1887, Mr. Ortmann replies as follows:

"HON. M. ENGELMANN,
        "Manistee, Mich.
    "*Dear Sir:* Your kind favor of the 13th inst. rec'd; contents duly noted. In reply will say that after consulting Mr. Butler I came to the following conclusion: If you will give me R. A. Seymour's notes, indorsed by yourself, running with interest 7 per cent. P. An. from August 19 (the date you bought the timber from Chappell and Smith), maturing January 15, next, for $2,333, and maturing on or before June 1, next, $7,000, I shall execute bill of sale in accordance with my contract with Chappell and Smith at once to you without further security; and, as Mr. Butler consented, as I said, will put his deed to me for the land upon the county of Lake record at once. Please remit these notes to Mr. Butler direct, and I will attend to the balance, if satisfactory to yourself and agreeable to Mr. Seymour. Thanking you for your prompt reply, I remain,
                    "Yours very truly,
                        "CHAS. L. ORTMANN."

Upon the margin below appears the following:

                    "DETROIT, Sept. 14, 1887.
    "I am willing to accept the within described notes in place of the security I now hold.
                        "E. H. BUTLER."

On October 1, 1887, Mr. Ortmann wrote to Mr. Engelmann as follows:

"DETROIT, MICH., Oct. 1, 1887.
"M. ENGELMANN, ESQ.,
        "Manistee, Mich.

"*Dear Sir:* Your favor of 27th ult. came duly to hand. In accordance with your request, I inclose you herewith bill of sale of the pine and ash timber, on lands in T. 20 N., R. 11 W.; also my agreement to extend the period of cutting and removing the said timber therefrom to January 1, 1891. Please to notify me by mail of your acceptance of the bill of sale and the agreement for cutting timber, with conditions and provisions therein mentioned; also, if these papers are satisfactory, please forward to me the assigned contract which you hold from Chappell and Smith. I have this day forwarded for record deed from E. H. Butler and wife to me for the lands in T. 20 N., R. 11 W. Your notes dated August 19, 1887,—one for $2,333, due January 15, 1888, and one for $7,000, due June 1, 1888,—were received by Mr. Butler all right.
                "Very respectfully yours,
                        "CHAS. L. ORTMANN."

Mr. Butler also wrote to Mr. Engelmann on October 1, 1887, saying:

"I have quitclaimed the land to Mr. Ortmann. He forwards the deed for record; also sends you bill of sale of the timber and agreement to extend time for cutting. I inclose herewith the note of R. A. Seymour, $9,333, indorsed by you.
                "Resp'y,          E. H. BUTLER."

The inclosures referred to in the letter of Mr. Ortmann to Mr. Engelmann were as follows:

### BILL OF SALE.

"*Know all men by these presents,* That I, Chas. L. Ortmann, of the city of Detroit, in the county of Wayne and State of Michigan, of the first part, for and in consideration of the sum of fourteen thousand ($14,000) dollars, lawful money of the United States, to me paid by M. Engelmann, of Manistee, Manistee county, Michigan,

of the second part, the receipt whereof is hereby acknowledged, have bargained and sold, and by these presents do grant and convey, unto the said party of the second part, his executors, administrators, or assigns, all the pine and ash timber growing, standing, and lying upon those certain pieces or parcels of land situate in the county of Lake and State of Michigan, and described as follows, to wit: In township twenty (20) north, of range eleven (11) west, the east half of north-east quarter (E. ½ of N. E. ¼), the north-west quarter of north-east quarter (N. W. ¼ of N. E. ¼), the north-east quarter of north-west quarter (N. E. ¼ of N. W. ¼), the south-east quarter of south-west quarter (S. E. ¼ of S. W. ¼), the south-west quarter of south-east quarter (S. W. ¼ of S. E. ¼), and the east half of south-east quarter (E. ½ of S. E. ¼), of section sixteen (16), and the south-west quarter of north-east quarter (S. W. ¼ of N. E. ¼), of section twenty-eight (28).

"This instrument is given in fulfillment of a certain contract, made and executed by the aforesaid Charles L. Ortmann, of date December 7, 1886, agreeing to convey the aforesaid timber to Eugene Chappell, of East Saginaw, Mich., and D. J. Smith, of Saginaw City, Mich., which said contract has been duly assigned by said Chappell and Smith to one R. A. Seymour, and by said Seymour to the aforesaid M. Engelmann, to have and to hold the same unto the said party of the second part, his executors, administrators, and assigns, forever.

"And the said party of the first part, for himself, his heirs, executors, and administrators, does covenant and agree to and with the said party of the second part, his executors, administrators, and assigns, to warrant and defend the sale of said property, goods, and chattels hereby made, unto the said party of the second part, his executors, administrators, and assigns, against all and every person or persons whatsoever, *except as to the conditions and provisions of the aforesaid contract.*

"In witness whereof, I have hereunto set my hand and seal this thirtieth day of September, one thousand eight hundred and eighty-seven.

"CHAS. L. ORTMANN.    [L. s.]

"Signed, sealed, and delivered in presence of
"ROSWELL HARRIS.
"ALFRED M. LOUD."

### AGREEMENT FOR CUTTING TIMBER.

"DETROIT, MICH., Sept. 30, 1887.

"I do hereby agree with M. Engelmann, of Manistee, Mich., as follows, to wit:

"That, whereas, I did, on the 7th day of December, A. D. 1886, make an agreement with Eugene Chappell, of East Saginaw, Mich., and D. J. Smith, of Saginaw City, Mich., to sell to them all the pine and ash timber from certain lands in T. 20 N., R. 11 W., which said contract was assigned by said Chappell and Smith to one R. A. Seymour, and by said Seymour to the aforesaid M. Engelmann; and, whereas, the time for cutting and removing said timber was limited in said contract to three years from January 1, 1887, that is to say, to January 1, 1890; and, whereas, said Engelmann has requested that the period for cutting and removing said timber be extended for one year longer, to wit, to January 1, 1891:

"Now, therefore, if said Engelmann shall well and truly pay, in due season, all the taxes levied or assessed upon the lands' mentioned in said contract with said Chappell and Smith, for the additional year hereby granted, that is to say, for the year 1890, and in consideration of such payment of taxes, and not otherwise, I do hereby agree to extend to said Engelmann the period for cutting and removing said timber for one year longer; that is to say, to the first day of January, A. D. 1891.

"CHAS. L. ORTMANN."

In making out the above bill of sale Mr. Ortmann used an ordinary blank form, but the sentence appearing in italics was interlined with ink. I mention this because it was regarded as important by petitioner's counsel upon the argument. The oral testimony introduced to vary or explain the written evidence, or to show the intention of the parties, is excluded from our consideration as being incompetent. We think there is enough upon the face of the papers, taken in connection with the correspondence, to dispose of the question without resort to oral testimony.

At the time the bill of sale was executed, Engelmann owned all of the interest in the pine and ash timber

which Ortmann had conveyed by his contract to Chappell
and Smith, and Ortmann had been informed that he was
such owner. He held Seymour's note, indorsed by Engel-
mann, for $9,333, payable on or before June 7, 1888, which
he had placed with Butler as collateral security. There
was nothing in the contract which prevented Engelmann
from cutting timber, but, if he did cut, the title to the
severed timber would remain in Ortmann, and he would
only be adding value to Ortmann's property by so doing,
without any right to dispose of the same unless Ortmann
consented to the sale. The contract effectually hampered
any operations looking towards the conversion of the
timber into money. It prevented the sale of the timber
by Engelmann. He could make full payment at any
time, and thus become invested with the legal title; but
nothing short of full payment would do so

Ortmann had written Engelmann, explaining his situ-
ation, and of the title; that he had owed the bank $15,000,
and had placed the title of the land and the note for
$9,333, which he had received from Chappell and Smith,
and later the substituted note of Seymour, indorsed by
Engelmann, in Butler's hand as security; that he had re-
duced the indebtedness to $7,000. Upon this information
Engelmann offered to pay him the balance over the $7,000,
namely, $2,333, and pay the balance on or before June 1,
1888, providing he could cut the timber. The meaning
of this expression, "providing I can cut the timber," was
perfectly clear to Mr. Ortmann. Both parties knew it did
not refer to what Engelmann had a right to do then
under the contract. Mr. Ortmann understood that En-
gelmann referred to a transfer of the title, so as to make
the cutting of the timber of value to him. Consequently,
on receipt of this proposition, he wrote the letter of
September 14, 1887, in which he makes the proposition
that if Engelmann will give him the notes specified he

will execute a bill of sale in accordance with his contract with Chappell and Smith *at once,* to Engelmann, *without further security,* and Butler would reconvey the land to him. The object of all this was to convey the title of the timber to Engelmann. To carry out this purpose, Butler reconveyed the land, by deed dated September 30, 1887, to Ortmann, and he on the same day, by bill of sale, conveyed the title of the timber to Engelmann. If the bill of sale was not executed to convey the absolute title to the timber to Engelmann, it was without point or purpose,—a mere idle ceremony.

It is claimed by petitioner's counsel that the words in italics in the bill of sale, namely, "except as to the conditions and provisions of the aforesaid contract," make the bill of sale subject to all of the provisions of the contract, including that which says the title to the timber shall not pass to the purchasers until full payment. I do not agree with him. The exception, whatever it may mean, is in the warranty clause, and not in the granting clause, of the contract. The bill of sale is absolute in terms, and acknowledges the receipt of the full contract price as a consideration. It further states that it is given in fulfillment of the contract of December 7, 1886, *agreeing to convey* the aforesaid timber to Chappell and Smith; and in it Ortmann agrees to warrant and defend the sale of the property thereby to Engelmann against all persons whatsoever. If it was the intention, by the exception which then follows, to retain in Ortmann the title to the timber which, by the same instrument, he conveyed, the exception would be repugnant to the grant, and void. It cannot be constructed to have the effect to nullify the sale of the timber, and of the vesting of the title in Engelmann.

When the bill of sale was executed and delivered to Engelmann, the only provisions of the contract remaining

in force were those providing that the timber not taken off within the time limited should revert and belong to Ortmann, which time was extended to 1891, and the fifth and sixth clauses, not necessary to mention here. The bill of sale was not obtained. by fraud, and it is a valid instrument. By it Ortmann voluntarily parted with his title to the timber, and has no lien or claim either upon the timber or upon the proceeds or avails thereof.

The decree appealed from is affirmed, with costs.

MORSE, LONG, and GRANT, JJ., concurred.